UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VARQUIN ENTERPRISES INC., a New York corporation,<br><br>Plaintiff,<br><br>v.<br><br>PERRY PUBLICATIONS LIMITED, a United Kingdom corporation,<br><br>Defendant. | SDNY Docket No. 07-cv-3953 (LBS)<br><br>NY Supreme Docket No. 07/106,689 |

**MEMORANDUM OF LAW IN
OPPOSITION TO PLAINTIFF VARQUIN
ENTERPRISES INC.'S ORDER TO SHOW CAUSE**

**INTRODUCTION**

On Thursday, May 31, 2007, Varquin Enterprises, Inc. ("Varquin") presented its application by order to show cause seeking a declaration that there had as yet been no termination of the license agreement (the "License") by which Varquin had previously licensed the right to use the trademarks "BUSINESS TRAVELER" and "BUSINESS TRAVELER INTERNATIONAL" (the "Marks") from defendant Perry Publications Ltd. ("Perry"). Just the day before, Varquin had secretly dispatched thousands of copies of its June 2007 edition of the magazine bearing Perry's Mark BUSINESS TRAVELER its title (the "North American Edition" of the "Magazine"). Perry had notified Varquin on May 3, 2007, that the License had terminated, and when negotiations for a new license had failed, Perry had warned Varquin on

May 25, 2007 that any further use of the Marks would constitute willful trademark infringement. Varquin nevertheless developed, printed and distributed the Magazine anyway.

Varquin unsuccessfully applied to State Court for a declaration of non-termination, stating that it needed such a declaration in order to keep using the Marks to publish the Magazine. By publishing the Magazine without such a Court declaration, Varquin took the law and the Marks into its own hands. In its after-the-fact application to this Court for such a declaration, Varquin alleges that Perry breached the covenant of good faith and fair dealing. The allegations are baseless, as described below.

## ARGUMENT

### 1. The Covenant Does Not Require A Party to Set Aside Its Other Business

While the covenant of good faith and fair dealing is implicit in all contracts under New York law, Dalton v. Educational Testing Serv., 663 N.E.2d 289 (N.Y. 1995), the covenant is limited. It does not require a party to go against its own interests in order to show good faith, even if pursuit of those interests incidentally lessens the other party's anticipated fruits from the contract. Van Valkenburgh, Nooger & Neville, Inc. v. Hayden Publishing Co., 281 N.E.2d 142 (N.Y. 1972) (book publisher did not breach the covenant of good faith towards an author by publishing other books on the same subject, promoting these other books, and suspending advertising for the author's books). See also, New Paradigm Software Corp. v. New Era of Networks, Inc., 2002 U.S. Dist. LEXIS 23753, at 53 (S.D.N.Y. 2002) (absent a specific covenant not to compete, the covenant of good faith does not require a contracting party not to market a competing product, even where, unlike here, there is a specific "best efforts" clause). It therefore cannot be a breach of the covenant for Perry to have sold advertising in competing publications.

## 2. The Covenant Cannot Add New, Un-bargained for Obligations

Some cases have described the covenant as also including any promises which a reasonable person in the position of the promisee would be justified in understanding were included. Rowe v. Great Atlantic & Pacific Tea Co., 46 N.Y.2d 62, 69 (N.Y. 1978). But in this respect too, the covenant is limited. In the area of the obligations of sales representatives in particular, the sales representative's reasonable expectations have been found to be highly limited. For example, in Ari & Co. v. Regent Int'l Corp., 273 F. Supp. 2d 518 (S.D.N.Y. 2003), the court dismissed a claim by a sales representative against a distributor for breach of the covenant of good faith, stating that sales representative should have reasonably expected that distributor would independently develop contacts which the sales representative introduced.[1]

Likewise in this case, there is no basis whatsoever for construing the covenant as implying a new duty on Perry to sell a set amount of advertising for Varquin. Varquin was fully aware that Perry also acted as advertising sales representative for other editions of the Magazine around the globe. As counsel for Varquin conceded during oral argument in Chambers on May 31, 2007, Perry was not even appointed as an exclusive sales representative for Varquin anywhere. Nor did the License impose on Perry a duty to sell advertisements—the License contains neither a minimum, nor a quota, nor a statement of expected dollar sales volume, nor

---

[1] As the North American edition is only one of several editions of the Magazine, it would be unreasonable to expect Perry to advance the interests of one edition above Perry's own interests or those of other licensees. See also Don King Productions, Inc. v. Douglas, 742 F. Supp. 741, 768 (S.D.N.Y. 1990) (boxing promoter with worldwide exclusive contract to promote plaintiff boxer "cannot fairly be said to have had any obligation to *favor* [plaintiff's] fighting interests over those of [other] fighters [he] promoted, since that would be "an additional benefit for which [plaintiff] did not bargain."). Likewise, in Zilg v. Prentice-Hall, Inc., 717 F.2d 671 (2d Cir. 1983), the Court observed that an author has a bigger stake in the success and failure of a single book than a publisher who regards the book among many publications. As a result, "differences in perspective and resulting perceptions are inevitable" because the author's eggs are in one basket, unlike the publisher's. Id. at 679.

does it even state that Perry was to use best efforts or even commercially reasonable efforts.[2] Instead, the License merely stated that <u>if</u> Perry sold advertising for Varquin, Perry would receive a specified commission. In the circumstances, Perry was free to sell advertising in its other magazines, and to direct purchasers to other editions of the Magazine when doing so served its interests. Varquin makes a much less serious allegation here, however: Varquin merely claims that Perry "lost interest" in selling advertising for the North American Edition. Such an allegation does not even state a claim for breach of the covenant of good faith and fair dealing. Ari & Co. v. Regent Int'l Corp., 273 F. Supp. 2d 518 at 523.[3]

In addition, for a promise to be implied into a contract, it must not only be reasonably expected, it... "must be so much a part of a contract *as to be essential to effectuate the contract's purposes.*" Bank of China v. Chan, 937 F.2d 780, 789 (2d Cir. 1991) (italics added). The one thing that was essential for Varquin to maintain its License was to pay the license fee, which Varquin has admitted it did not do. The truth is that Varquin could derive the revenue to pay its license fee in any way it chose – by securing financing, by selling subscriptions, sponsorship, or otherwise. Varquin could have derived advertising revenue by soliciting advertisers anywhere in the world, or by appointing other sales reps. Having failed to do so, Varquin now claims it was essential for Perry to maintain prior sales performance. The covenant of good faith implies no such obligation.

---

[2]     Nor is such an obligation implied. Liu v. Beth Israel Medical Center, 2003 WL 21488081, *3 (S.D.N.Y. 2003) ("the covenant of good faith and fair dealing does not include the requirement to use best efforts"); Travellers Intern., A.G. v. Trans World Airlines, Inc., 41 F.3d 1570, 1575 (2d Cir. 1994) ("It is well-settled that, in construing discretionary promotional contracts, courts will not read into them a 'best efforts' or a 'promote fully' clause unless the parties have explicitly bargained for such an obligation.").

[3]     While Perry is alleged to have directed one single advertiser <u>away</u> from Varquin, Declaration of Adam Rodriguez, ("Rodriguez Dec."), ¶ 33, this unsupported allegation is based on hearsay which Perry flatly denies. Varquin cannot and does not claim that Perry refused to sell advertising on behalf of Varquin: Perry even procured a new advertising lead and informed Varquin of it as recently as the week of May 29, 2007, after this Court started

### 3. **The Covenant Cannot Be Breached By Omission, Only By Affirmative Acts**

Rather than creating new affirmative obligations, the covenant of good faith prevents a party from intentionally committing affirmative acts which make it impossible for the other party to carry out the agreement. Ferguson v. Lion Holding, Inc., 478 F. Supp. 2d 455, 470 (S.D.N.Y. 2007). Under this well-settled doctrine, merely failing to act cannot be a breach of the covenant. See In re Bankers Trust Co., 450 F.3d 121, 128 (2d Cir. 2006) ("where a promisor has no duty to bring about the condition precedent to his promise, only active conduct by the promisor to frustrate the occurrence of the condition precedent constitutes waiver of that condition precedent."); Rooney v. Slomowitz, 11 A.D.3d 864, 867 (N.Y. App. Div. 2004) (in the absence of a contractual obligation to establish the location for a new road and to obtain necessary permits, a party who failed to do so did not breach the covenant of good faith, even though such failure prevented performance by the other party, who was obligated to build the road).

Here, Varquin only does not even allege that Perry failed completely to procure advertising revenue—only that Perry did not procure enough. Varquin alleges no affirmative act by Perry which completely prevented Varquin from paying its license fee. Without such an allegation, there can be no breach by Perry of the covenant.[4]

---

hearing this case. Moreover, as Varquin has acknowledged, Perry did sell advertising in the North American Edition during 2007. Id. ¶ 31.

4   In one footnote in its brief, Varquin argues that Perry owed a fiduciary duty to Varquin. In fact, courts have consistently found that no fiduciary relationship exists between sales agents and their principals. See Van Valkenburgh, Nooger & Neville, Inc. v. Hayden Publishing Co., 33 A.D.2d 766, at 766 (N.Y. App. Div. 1969) (no fiduciary relationship between author and publisher, selling author's books); Sanshoe Trading Corp. v. Mitsubishi Int'l Corp., 470 N.Y.S.2d 991, at 993 (N.Y. Special Term) (no fiduciary relationship between independent U.S. sales agent and its principal,). Even exclusive sales representation is insufficient to give rise to fiduciary duties. Millenium Expressions, Inc. v. Chauss Mktg., Ltd., 2007 U.S. Dist. LEXIS 22861, at 29 (S.D.N.Y. 2007) ("Generally, the relationship between an exclusive sales representative and a distributor, without more, is not a fiduciary relationship"); Lane v. Mercury Record Corp., 21 A.D.2d 602, 606 (1st Dept. 1964) ("A royalty or percentage

## CONCLUSION

Even accepting Varquin's evidence at face value, there is insufficient evidence to show any likelihood of success on the merits of Varquin's claim. Unlike Perry, Varquin cannot establish irreparable harm, as it has acknowledged it can continue business without using the Marks. The declaration which Varquin seeks is also hopelessly overbroad, and would constitute a prior restraint on Perry's right to speak and conduct its business affairs. Varquin's Order to Show Cause should be denied in its entirety.

Dated: June 5, 2007
      New York, New York

                        COWAN DeBAETS ABRAHAMS
                        & SHEPPARD, LLP

                        By _____
                           Toby M.J. Butterfield (TB-8599)
                        Nancy E. Wolff (NW-7508)
                        Mason A. Weisz (MW-5954)

                        41 Madison Avenue, 34th Floor
                        New York, New York 10010
                        Telephone: (212) 974-7474
                        Facsimile: (212) 974-8474

                        *Attorneys for defendant-counterclaimant*
                        *Perry Publications Limited*

---

arrangement would not, in and of itself, establish a fiduciary relationship."). Varquin therefore has no claim for breach of fiduciary duty.